UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JACQUELINE KAMIN, individually on behalf
of herself and others similiarly situated,

     Plaintiff,

v.

R.K.J., INC., a Domestic Profit Corporation
N.O.J., INC., a Domestic Profit Corporation
K.J.1., INC., a Domestic Profit Corporation
NASSER JALLAD, Individually and
KAREEM JALLAD, Individually,

     Defendants.

_____/

Hon. Mark A. Goldsmith
Case No.: 2:18-cv-11137

**JURY DEMAND**

Michael N. Hanna (P81462)
MORGAN & MORGAN, P.A.
2000 Town Center, Suite 1900
Southfield, MI 48075
(313) 739-1951
(313) 739-1975 (fax)
mhanna@forthepeople.com

Christopher R. Mikula (P69661)
OGLETREE, DEAKINS, NASH
SMOAK & STEWART PLLC
34977 Woodward Ave., Suite 300
Birmingham, MI 48009
(248) 593-6400
(248) 593-2603 (fax)
christopher.mikula@ogletree.com

Lauren H. Zeldin
Georgia Bar No. 368999
Admitted in Eastern District of MI
OGLETREE, DEAKINS, NASH
SMOAK & STEWART PLLC
191 Peachtree St., Suite 4800
Atlanta, GA 30303
(404) 881-1300
(404) 870-1732 (fax)
Lauren.zeldin@ogletree.com

*Attorneys for Plaintiffs*          *Attorneys for Defendants*

## JOINT MOTION TO APPROVE FLSA SETTLEMENT

Plaintiff, JACQUELINE KAMIN on behalf of herself and others similarly situated (collectively "Plaintiffs") and Defendants, R.K.J., INC, N.O.J., INC., K.J.1., INC., NASSER JALLAD, and KAREEM JALLAD (collectively "Defendants"), by and through their respective attorneys, hereby jointly file this Joint Motion for approval of the settlement agreements between the Plaintiffs and Defendants (collectively, the "Parties"), and for entry of an order approving the settlement agreement, attached as **Exhibit A**[1], and dismissing the case with prejudice.  In support, the Parties state as follows:

## BACKGROUND

1.     This is a collective action for unpaid wages brought under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et. seq.*

2.     On April 10, 2018, Plaintiff filed this collective action lawsuit on behalf of herself and all similarly-situated individuals. *See* D.E. 1.

3.     Plaintiff alleges that the putative class work/worked for Defendants as non-exempt employees, and were compensated at an hourly rate of pay for their hours worked.  *See* Amended Complaint, D.E. 7.

---

[1] The parties will supplement this joint motion and submit the referenced exhibit shortly.

4.     Plaintiff alleges that Defendants violated the FLSA by failing to compensate her and other similarly-situated hourly-paid employees for all hours worked.  *See Id*.  Instead, Plaintiffs allege that they worked off-the-clock, and were therefore not compensated for all of their hours worked.

5.     Defendants, Kareem Jallad and/or Nasser Jallad own and/or operate Defendants, R.K.J., Inc. and KJ1, Inc., and formerly owned and operated N.O.J., Inc., which are four McDonald's franchise restaurants, located in Taylor, Southgate, and Ypsilanti, Michigan.

6.     Defendants deny any and all liability or wrongdoing of any sort with respect to the Plaintiffs' allegations.  *See* D.E. 12.  Defendants allege that the Opt-in Plaintiffs are/were required to clock-in for all hours worked, and have been compensated for all of their hours worked.

7.     After extensive discussions, drafting and negotiations, the parties prepared and filed a Stipulation as to Conditional Certification of Collective Action and Notice Procedures.

8.     On August 6, 2018, the Court entered a Stipulated Order approving Conditional Certification of the Collective Action and Notice Procedures, granting conditional certification for "all current and former hourly-paid employees who worked for any of the Defendants in the position of Crew, Swing Manager or Department Head from April 10, 2015 through the present."  *See* D.E. 17.

9.     Pursuant to the Court's Order, Defendant provided Plaintiff with a list of all persons in the putative class, and Plaintiff sent notice of collective action proceeding to all potential class members during the court-approved notice period.

10.     The notice period lasted sixty (60) days, and ended on November 5, 2018.

11.     During the notice period, 113 putative class members joined the collective action and became Opt-in Plaintiffs by filing their consent to join forms.[2]  *See* Docket, *generally*.

12.     From November 5, 2018 to February 26, 2019, the parties conducted discovery and exchanged voluminous documents concerning Defendant's pay practices, and the Opt-in Plaintiffs' pay and time records.

13.     On February 26, 2019, the parties mediated this matter with Judge James Rashid, former Chief Judge of Wayne County Circuit Court.

14.     Despite the parties' best efforts, they were not able to resolve this matter on February 26th, but agreed to exchange additional documentation and conduct additional discovery until March 25, 2019.

15.     The parties reconvened the mediation before Judge Rashid on March 25, 2019, but were not able to resolve this collective action on that date.  However,

---

[2] Prior to the notice period, Opt-in Plaintiff Rodney Pedrys also joined this collective action and filed his consent to join.  *See* D.E. 3.

the parties agreed to continue settlement discussions with Judge Rashid's assistance.

16.    After months of negotiations and discussions, Judge Rashid submitted a mediator's proposal to the parties on April 2, 2019.

17.    On April 17, 2019, Judge Rashid advised the parties that the matter has been resolved, and that both parties accepted his mediator's proposal.

18.    Thereafter, the parties prepared a settlement agreement to reflect the material terms set forth in Judge Rashid's mediator proposal.  *See* Settlement Agreement, attached as **Ex. A**.

19.    Throughout the course of litigation, Defendants maintained that it properly paid the Plaintiffs for all hours worked.

20.    Nonetheless, Defendants have concluded that further litigation of this matter would be protracted, distracting and expensive, and thus it is desirable that this matter be fully and finally settled in the manner and upon the terms set forth in the Settlement Agreement.

21.    As a result of the discovery conducted, there remained many genuine material disputes, which include:

> a. Whether the putative class, which includes Opt-in Plaintiffs employed as  either Crew, Swing Manager and/or Department Heads at four different McDonald's franchise restaurants, are similarly-situated;

5

b. Whether Plaintiffs worked in excess of forty (40) hours and if so, whether Plaintiffs were compensated for all of their hours worked;

c. Whether damaged should be calculated at a half-time rate or time and one-half rate;

d. Whether the applicable statute of limitations is two or three years; and

e. Whether Defendants acted in objective and subjective good faith such that payment of liquidated damages is applicable.

22.    Plaintiff believes that the claims alleged are meritorious, and that they will prevail in trial.

23.    Notwithstanding the foregoing, upon careful review of the records and defenses, the Plaintiffs agreed to settle this matter based on Judge Rashid's mediator proposal.

24.    The Settlement Agreement is attached as **Ex. A**.

25.    The Opt-in Plaintiff Notice of Settlement and Release of Claims is also attached to the Settlement Agreement.

26.    The settlement was the result of arm's length negotiations before an experienced mediator/former judge, and both parties were represented by national law firms experienced in wage and hour collective action litigation.

27.    The settlement monies each Plaintiff is to receive pursuant to the settlement agreement provides a fair, adequate, and reasonable settlement to the

Plaintiff and Opt-in Plaintiffs for the off-the-clock damages they allege in this matter, including receipt of an equal amount of liquidated damages for same.

28.     The monetary payment each Opt-in Plaintiff is to receive is set forth in Exhibit A of the Settlement Agreement.

29.     The monetary payments are individualized for each opt-in plaintiff on a *pro rata* basis based on each Opt-in Plaintiff's respective hourly rate of pay and number of workweeks each Opt-in Plaintiff worked for Defendants during the relevant time period.

30.     In essence, the settlement will compensate each Opt-in Plaintiff for: 1) approximately 3.5 overtime hours worked based on each Opt-in Plaintiff's respective rate of pay; 2) for each workweek they worked; 3) for a three year period; 4) where the compensation for each of the aforementioned overtime hours worked is calculated at a time and one-half rate their regular rate of pay; 5) and each Opt-in Plaintiff will also receive an equal amount of compensation for liquidated damages.   Put another way, each Opt-in Plaintiff shall receive the functional equivalent of overtime compensation calculated at a time and one-half their respective rate of pay for approximately 7 overtime hours for each workweek they worked during a three year period.

31.     The settlement represents fair, adequate, and reasonable relief to the Plaintiff and Opt-in Plaintiffs for all wage and hour claims during the relevant time period, including full liquidated damages for a three-year period.

32.     In addition, the settlement agreement provides that the named Plaintiff shall receive an additional $2,000 as a service award, which "are typically awards to class representatives for their often extensive involvement with a lawsuit." *Hadix v. Johnson*, 322 F.3d 895, 897 (6th Cir. 2003).   Numerous courts have authorized such awards as "efficacious ways of encouraging members of a class to become class representatives and rewarding individual efforts taken on behalf of the class." *Id.; See also Christopher Carr, et al., v. Bob Evans Farms, Inc., et. al,* No. 1:17-CV-1875, 2018 WL 7508650, at *3 (N.D. Ohio July 27, 2018) (awarding each named Plaintiff with a $5,000 service award).

33.     As reflected in the settlement agreement, Plaintiffs' attorneys' fees are 1/3 of the common fund.   Consistent with Sixth Circuit authority, courts within the Sixth Circuit and throughout the country, have agreed that it is appropriate for class counsel to receive their attorneys' fees as a percentage of the common fund, when such fund is created due to their efforts.   *See Rawlings v. Prudential-Bache Properties, Inc.*, 9 F.3d 513, 516 (6th Cir. 1993) ("The percentage of the fund method has a number of advantages: it is easy to calculate; it establishes reasonable expectations on the part of plaintiffs' attorneys as to their expected recovery; and it

encourages early settlement, which avoids protracted litigation."); *Dillworth v. Case Farms Processing, Inc.,* 2010 WL 776933, at *8 (N.D. Ohio Mar. 8, 2010) ("The amount of the contingency, one-third of the total award, is also reasonable and has been approved in similar FLSA collective actions") (collecting cases); *see also Stahl v. Mastec, Inc.*, 2008 WL 2267469, at *1 (M.D. Fla. May 20, 2008)("attorneys who create a common fund are entitled to be compensated for their efforts from a reasonable percentage of that fund."), citing *Camden I Condominium Assoc., Inc. v. Dunkle*, 946 F.2d 768, 774 (11th Cir. 1991) ("Henceforth in this circuit, attorneys' fees awarded from a common fund shall be based upon a reasonable percentage of the fund established for the benefit of the class.").

34. Consistent with this approach, courts throughout the Sixth Circuit have repeatedly held that 1/3 of a common fund is presumptively reasonable when a case is resolved with the creation of a common fund. *See, e.g., In re Skelaxin (Metaxalone) Antitrust Litig.*, 2014 WL 2946459, at *1 (E.D. Tenn. June 30, 2014) ("The Court finds that the requested counsel fee of one third is fair and reasonable and fully justified. The Court finds it is within the range of fees ordinarily awarded."); *Manners v. Am. Gen. Life Ins. Co.*, 1999 WL 33581944, at *29 (M.D. Tenn. Aug. 11, 1999).

35.     Indeed, throughout the Sixth Circuit, attorneys' fees in class/collective actions typically range from 30%–50%. *See, e.g., In re Cincinnati Microwave Inc. Sec. Litig.*, Consolidated Master File No. C–1–95–905, Order and Final Judgment (W.D. Ohio Mar. 21, 1997) (awarding 30%); *Adams v. Standard Knitting Mills, Inc.*, [1978 Transfer Binder] Fed. Sec. L. Rep. (CCH) ¶ 96,377 (E.D. Tenn. Jan. 6, 1978) (35.8% award).[3]

---

[3] In addition to the aforementioned authority, case law from throughout the country supports the payment of attorneys' fees as a percentage of the total common fund. *See Prasker v. Asia Five Eight LLC, et. al*, 2010 WL 476009, at *6 (S.D.N.Y. Jan. 6, 2010) (stating that "[i]n wage and hour class action lawsuits, public policy favors a common fund attorneys' fee award" and awarding an attorney fee payment of $346,500 out of the common fund of $1,050,000 (33%)); *Duchesne v. Michael Cetta, Inc.,* 2009 WL 5841175, at *3 (S.D.N.Y. Sept. 10, 2009) (approving attorney fees of $1,015,000 out of a common fund of $3,150,000, or 32.2%, and stating that the "percentage of recovery" method is consistent with the trend in the Second Circuit); *Faltaous v. Johnson and Johnson, et. al.*, 2007 WL 3256833, at *10 (D.N.J. Nov. 5, 2007) ("attorneys' fees of approximately 30 percent of the common fund are also regularly awarded in labor and employment law class actions.") (internal citations omitted); *Mohney v. Shelly's Prime Steak, Stone Crab & Oyster Bar*, 2009 WL 5851465, at *5 (S.D.N.Y. March 31, 2009) (awarding 33% of common fund of $3,265,000.00 as attorneys' fees); *Stahl,* 2008 WL 2267469, at *2 (M.D. Fla. 2008) (approving attorney fees of $3,744,500.00 out of a common fund of $13,137,365.00); *Reyes v. Buddha-Bar NYC*, 2009 WL 5841177 (S.D.N.Y May 28, 2009) (awarding attorneys' fees of 33 1/3% from common fund of $710,000.00); *Noell v. Suncruz Casinos*, 2009 WL 541329, at *1 (M.D. Fla. March 4, 2009); *Moultry v. Cemex, Inc.*, 8:07-cv-453-T-MSS (M.D. Fla. August 20, 2008) (awarding 32.25% of the common fund as attorneys' fees); *Kimmel et al., v. Venture Construction Co.*, Case No. 1:10-cv-01388-RLV-WEJ, Docs. 69, 70 (N.D. Ga. Nov. 4, 2010) (approving common fund class settlement on behalf of class of construction superintendents).

36.    The Parties agree that 33.3 % of the common fund is a reasonable percentage for attorneys' fees and costs.    Plaintiffs' counsel has extensive experience litigating wage and hour class/collective actions and the results in this matter warrant such an amount, given Defendants' vigorous defense and the results obtained on behalf of Plaintiffs.

37.    Subject to the Court's approval of the settlement, the settlement payments shall be disbursed on or before October 2, 2019.

38.    Should the Court Grant the Joint Motion to Approve FLSA Settlement and Request for Dismissal, the parties respectfully request the court Dismiss this matter with prejudice pursuant to the Proposed Stipulated Order of Dismissal with Prejudice.  *See* D.E. 19.

WHEREFORE, the Parties respectfully request that the Court enter an Order approving the Settlement Agreement and dismiss the case with prejudice.

## MEMORANDUM OF LAW

An employee's rights to a minimum wage and overtime premium wages under the FLSA are mandatory and are not subject to bargaining, waiver, or modification by contract or settlement.  *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 706 (1945).  An exception to that general rule exists when a *bona fide* dispute arises between the employee and employer, and that dispute is settled under court supervision.  *Crawford v. Lexington-Fayette Urban Cty. Gov't,* No. 06-299, 2008 WL 4724499, at *3 (E.D. Ky. Oct. 23, 2008) (citing *Lynn's Food Stores v. U.S.,*

679 F.2d 1350 (11th Cir. 1982)). The Court's obligation in reviewing settlements of FLSA claims is to "'ensure that the parties are not, via settlement of [the] claims, negotiating around the clear FLSA requirements of compensation for all hours worked, minimum wages, maximum hours, and overtime.'" *Rotuna v. W. Customer Mgmt. Group LLC*, 2010 WL 2490989, at *5 (N.D. Ohio June 15, 2010) (*quoting Collins v. Sanderson Farms, Inc.*, 569 F.Supp.2d 714, 719 (E.D. La. 2000)).

This matter involves allegations of off-the-clock violations against a putative class of hourly-paid workers at four McDonald's franchise locations in Michigan. *See* D.E. 1. In essence, the collective action members allege they were not compensated for their all of their overtime hours worked. While Defendants deny all liability, as set forth herein, the settlement reached provides all collective action members with a fair, adequate, and reasonable settlement award for their claims based on the settlement terms, and the Court should approve the collective action settlement, and dismiss the case with prejudice.

## <u>CONCLUSION</u>

The Parties voluntarily agreed to the terms of their settlement. All Parties were counseled and represented by their respective attorneys throughout the litigation and settlement process. The settlement was conducted over months-long negotiations before an experienced mediator, Judge Rashid, and provides the Plaintiff and all Opt-in Plaintiffs with fair, adequate, and reasonable relief for their FLSA claims. Accordingly, the Parties jointly and respectfully request that this

Court approve the terms of the Settlement Agreement and dismiss this case with prejudice.

Dated: May 9, 2019.

Respectfully Submitted,

<table>
<tr>
<td>

/s/ Michael N. Hanna
Michael N. Hanna (P81462)
MORGAN & MORGAN, P.A.
2000 Town Center, Suite 1900
Southfield, MI  48075
(313) 739-1951
mhanna@forthepeople.com

</td>
<td>

/s/ Lauren H, Zeldin (with consent)
Lauren H. Zeldin
Georgia Bar No. 368999
Admitted in Eastern District of MI
OGLETREE, DEAKINS, NASH
SMOAK & STEWART PLLC
191 Peachtree St., Suite 4800
Atlanta, GA 30303
(404) 881-1300
Lauren.zeldin@ogletree.com

Christopher R. Mikula (P69661)
OGLETREE, DEAKINS, NASH
SMOAK & STEWART PLLC
34977 Woodward Ave., Suite 300
Birmingham, MI 48009
(248) 593-6400
christopher.mikula@ogletree.com

</td>
</tr>
</table>

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on May 9, 2019, the foregoing document was filed using the CM/ECF system, which will send notice of same to all counsel of record.

<u>/s/Michael N. Hanna</u>